**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DANIEL BARKER,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,

        Defendant.

Civil Action No. 18-1717 (EGS)

<u>**MEMORANDUM OPINION**</u>

Plaintiff Daniel Barker brings this action against the United States of America, acting by and through the United States Marine Corps ("USMC"), which is a branch of the Department of the Navy. Mr. Barker argues that the USMC acted arbitrarily and capriciously when it denied his Servicemembers' Group Life Insurance Traumatic Injury Protection ("TSGLI") claim and that it should have utilized a lower standard in reviewing the claim.

Pending before this Court are the parties' cross-motions for summary judgment. Upon consideration of the parties' memoranda, the administrative record, the applicable law, and for the reasons discussed below, the Court **DENIES** Mr. Barker's motion and **GRANTS** the United States' cross-motion.

## I. Background

Because the claims in this action center on several statutes and regulations related to TSGLI, the Court will first discuss the statutory and regulatory background in detail.

### A. Statutory and Regulatory Background

The TSGLI program was established in 2005 to provide short-term financial assistance to servicemembers and veterans who have suffered from traumatic injuries. 38 U.S.C. § 1980A. To receive benefits under the program, a servicemember must show that his or her injury resulted in a "qualifying loss," which created an "inability to carry out" two or more activities of daily living ("ADLs"). *Id.* § 1980A(b)(1), (b)(2)(D). There are six qualifying ADLs under the program: bathing, continence, dressing, eating, toileting, and transferring (in or out of a bed or chair with or without equipment). *Id.* § 1980A(b)(2)(D)(i)-(vi); 38 C.F.R. § 9.20(e)(6)(vi). For TSGLI claims based on an inability to carry out ADLs, a servicemember must establish that he or she was unable to independently perform the ADLs for a minimum of thirty consecutive days. 38 C.F.R. § 9.20(f).

The TSGLI statute does not define the ability to "independently perform" an ADL. However, the Department of Veterans Affairs ("VA") has issued guidance on the term in the

*Traumatic Injury Protection Under Servicemembers' Group Life Insurance (TSGLI): A Procedural Guide* ("TSGLI Procedures Guide"). *See* AR 1238–1321. The TSGLI Procedures Guide provides that:

> A member is considered to have a loss of ADL if the member **REQUIRES assistance** to perform at least two of the six activities of daily living. If the patient is able to perform the activity by using accommodating equipment (such as a cane, walker, commode, etc.) or adaptive behavior, the patient is considered able to independently perform the activity.

AR 1256 (emphasis in original). The Guide goes on to explain that the term "requires assistance" means that a servicemember is incapable of performing the ADL without physical, stand-by, or verbal assistance. *Id.* at 1257; see *id.* (defining physical, stand-by, and verbal assistance).

Relevant to this pending motion are the provisions for the bathing and dressing ADLs. A servicemember is unable to bathe independently if he or she requires assistance from another person "to bathe more than one part of the body or to get in or out of the tub or shower." AR 1257. A servicemember is unable to dress independently if he or she requires assistance to get and put on appropriate clothing, socks, or shoes. *Id.*

The length of time a servicemember is unable to independently perform his or her ADL's is critical in determining the benefits to which the servicemember is entitled.

3

Servicemembers are entitled to TSGLI benefits after 30, 60, 90, and 120 consecutive days with a qualifying loss. 38 C.F.R.§ 9.20(f)(20). The TSGLI program will pay $25,000 for each consecutive thirty-day period of ADL loss, up to $100,000. *Id.* Servicemembers are also entitled to the first $25,000 of TSGLI benefits if they can show they were hospitalized for fifteen consecutive days due to traumatic injuries other than traumatic brain injuries even if they do not demonstrate a loss of an ADL for 30 consecutive days. *Id.*

The TSGLI program is administered by the VA, but the service branches are separately responsible for certifying TSGLI claims. 38 C.F.R. § 1980A(f); Secretary of the Navy Instruction ("SECNAVINST") 1770.4A § 3. In the Marine Corps, the first level of review—also termed a "reconsideration" of a claim—is considered by the Marine Corp's TSGLI office. TSGLI Procedures Guide, AR 1311. The second level of review is the TSGLI Appeals Board Navy Council of Review Boards (the "CORB"). *Id.* The third level of review is the Board for Correction of Naval Records (the "BCNR" or "Board"). *Id.*

### B. Factual Background

Mr. Barker, a member of the Marine Corps, suffered injuries to both of his hands while working as an Ordnance Disposal Specialist in Afghanistan. AR 0269. His injuries occurred due to

an ordnance explosion, which led to multiple partial finger
amputations. AR 0639-40.

After his accident, which occurred on August 20, 2011, Mr.
Barker underwent several surgeries on his hands and fingers and
received treatment from various hospitals over the course of
approximately three weeks.[1] AR 0533-34, 0550, 0639-40, 0746,
0754, 0783-85. He was initially treated at Bastion Role III
Medical Treatment Facility, Germany, and was then transferred to
Landstuhl Regional Medical Center ("LRMC") on August 22, 2011.
AR 0639-40. At LRMC, he underwent multiple surgeries. AR 0754,
0783. He was discharged from LRMC during the first week of
September and was transferred to Walter Reed National Military
Medical Center, East Bethesda, MD ("WRNMMC"). AR 0266, 0746,
1110. He was discharged from WRNMMC on September 9, 2011. AR
0266.

While at WRNMMC, Mr. Barker was treated by an occupational
therapist ("OT"), Peter Gaskins, who made several notations
related to Mr. Barker's developments in using his hands. AR
1355. On September 6, 2011, Mr. Gaskins noted that Mr. Barker
had "Modified Independence" for the functional abilities of
upper body bathing, lower body bathing, dressing upper body, and

---

[1] The timeline in Mr. Barker's case bears directly on his request
for benefits. Accordingly the dates in this case carry
significant weight.

dressing lower body. AR 1330-31. "Modified Independence" is described as "able to manipulate grasp and carry techniques for item retrieval and proper use of ADL items to carry out task. May take more than reasonable time to complete task due to injuries." *Id.* He noted that Mr. Barker was experiencing "ongoing impairments" including "increased pain and sensitivity, decreased [range of motion], [and] decreased strength in bilateral hands/digits impacting independence in ADLs and IADLs." AR 1355.

On September 8, 2011, Mr. Gaskins indicated that Mr. Barker achieved "Complete Independence." AR 1357. Mr. Gaskins anticipated that the discharge setting would include occupational therapy at home with his wife's assistance with fine motor tasks. AR 1359. Mr. Barker was treated at Naval Hospital Camp Lejeune following his discharge from WRNMMC. On September 26, 2011, OT Shanna Garcia noted that Mr. Barker was:

> [H]aving trouble with nearly all [ADL] functions. His wife is helping with set-up at home for meals (no knife), he can put on pants, but buttons and zippers are a struggle, he wears things that are easy to do. Shower is fine as long as the containers are open. Ziplocks, jars, bottle top, and packages are difficult. Not driving yet due to hands and meds. Shoelaces: 5 minutes per shoe.

AR 0301. On October 4, 2011 and October 13, 2011, separate reports from two OTs noted that Mr. Barker had a pain level of

5-6/10 on his left hand and 1-3/10 on his right hand at rest. AR 0293, 0288. On October 14, 2011, an OT noted that his pain was 5/10 on average and 8/10 at its worst, and most of the pain was at the stumps. AR 0285.

After a period of recovery, Mr. Barker went to the Camp LeJeune Naval Hospital for treatment on January 6, 2012. AR 0486. While there, OT John Balsamo noted that Mr. Barker's pain was 5/10 on the right ring finger and his hands. *Id.* OT Balsamo noted that Barker "feels stronger, but [the] lack of sensory discrimination impairs functions." AR 0488. Mr. Barker was discharged on March 20, 2012. AR 0869.

### C. Procedural Background

#### 1. Original Claim and CORB Review

Mr. Barker submitted a TSGLI claim for 15 days of inpatient hospitalization to the Marine Corps Headquarters. AR 1070. Shortly after, the Marine Corps approved the claim and awarded him $25,000 because he demonstrated that he was hospitalized for at least 15 days. AR 1110-11. Mr. Barker later supplemented his claim to include ADL losses of bathing and dressing; requesting benefits for loss of ADLs totaling over 90 days (i.e., an additional $50,000 benefit). AR 1014. The Marine Corps denied the supplemental claim explaining that Mr. Barker's medical

documentation did not meet the TSGLI standard for ADL losses
which extended to 60 days.[2] AR 1011.

Mr. Barker appealed the Marine Corps' decision to the CORB,
and filed a supplemental claim for ADL losses that extended the
originally claimed losses from August 20, 2011 through January
20, 2012. AR 0860-65. He included several new documents in his
appeal which included OT notes, treatment notes, pictures, and
emails between treating professionals. AR 0860-76.

The CORB again denied Mr. Barker's appeal. In a memorandum
dated March 22, 2013 the CORB explained its reason for the
denial:

> The Board reviewed the case file to determine
> if it met the TSGLI criteria for a traumatic
> event and ADL loss. The member's medical notes
> clearly support traumatic injury from the
> ordnance primer malfunction while deployed to
> Afghanistan. Regarding ADL loss, the Board
> found insufficient evidence to support the
> member's claim for ADL loss. LT Balsamo's
> email includes excerpts from [Plaintiff's]
> medical record, including an occupational
> therapy note dated 8 September 2011 (a date
> within the first 30 days period) that
> indicates the member had achieved "Complete
> Independence" for grooming, bathing, dressing
> upper body, toileting and transferring. The
> note also indicated the member was able to eat
> with minimal assistance (He potentially
> required assistance while carrying food trays
> and opening containers requiring pincer
> grasps; however, an ADL is considered

---

[2] As explained above, under the TGSLI the next benchmark for
payment of an additional $25,000 was ADL losses for a period of
at least 60 days.

> independent if the member can accomplish it
> with accommodative equipment). A 26 September
> 2011 occupational therapy initial evaluation
> stated, "he can put on pants, but buttons and
> zippers are a struggle, he wears things that
> are easy to do. Shower is fine as long as the
> containers are open." The Board found that
> this information did not meet the criteria of
> "required assistance or standby assistance"
> for the claimed ADLs of bathing and dressing.
> Given this, the Board found that the
> preponderance of evidence does not support
> compensation for ADL loss.

AR 0855-56.

Mr. Barker requested a reconsideration of his appeal to the CORB for his denied claim of a loss of ability to independently perform at least two ADLs for 60 and 90 days. AR 0141, 1111. In support of his appeal, he submitted a statement from an independent registered nurse, Terri Burns, AR 0365-67; a statement from his wife, 0825-26; and his own statement, AR 0822-23. Although the CORB granted his request for a new decision considering the new evidence, AR 0140, the CORB ultimately denied Mr. Barker's request for reconsideration. AR 0133. The CORB reasoned that because Mr. Barker was able to accomplish his ADLs with accommodative equipment, he did not meet the criteria for required or standby assistance. AR 0135. Therefore his request for reconsideration was denied. *Id.*

## 2. Application for Review by BCNR and District Court Review

On July 30, 2015, Mr. Barker submitted an "Application for Correction of Military Record" to the BCNR. AR 0019-20. His application was denied on May 20, 2016. AR 0001-02. In denying his application, the BCNR stated that it was "sympathetic to the severity of [Mr. Barker's] injuries and the difficulties [he] encountered with performing ADLs," but determined that "there was conclusive evidence that [he] did not require assistance in performing [his] ADLs beyond 26 September 2011." *Id.* Therefore his application was denied. *Id.*

Having exhausted administrative review, Mr. Barker sought judicial review of the BCNR's decision to deny his application. He filed a complaint in the U.S. District Court for the Central District of California, which issued a Remand Order on August 31, 2017 to the BCNR. AR 1373-79. Mr. Barker thereafter submitted additional evidence to support his claim. AR 1138-41, 1324-35, 1336-42, 1344-46. On remand, the BCNR asked the CORB to provide comments and recommendations on Mr. Barker's claim to help it come to a decision. AR 1407. The BCNR sent two letters to the CORB. In one letter the BCNR asked the CORB to "[e]valuate all of [Mr. Barker's] medical records" and to reconcile certain notes that seem to contradict each other. *Id.* The BCNR also requested that the CORB "[c]learly articulate[]

[its] decision in light of the contradicting . . . occupational notes." *Id.* The BCNR's other letter requested the CORB to, among other things, "[c]learly articulate[] [its] decision in light of any/all evidence provided by [Mr. Barker]." AR 1124.

On February 21, 2018, the CORB issued an advisory opinion to the BCNR ("Advisory Opinion") recommending denial of additional TSGLI benefits. AR 1114–17. In the Advisory Opinion, the CORB provided the following analysis for bathing independently:

> As far as bathing is concerned, the 8 September 2011 note opined the member was bathing completely independently; however LT Balsamo's [12 June 2012] note stated the member was having difficulty opening shampoo bottles. While these two assessments seem at odds with one another, this confusion is eliminated if one refers back to [the TSGLI Procedural Guide]. According to the [TSGLI Procedural Guide], members are considered unable to bathe independently if they are unable to bathe more than one part of the body . . . or get out of the tub or shower. [The TSGLI Procedural Guide] also states that patients who are able to perform an activity with the help of accommodations are considered to be able to independently perform the activity. Keeping shampoo bottles open for easy access is a sensible accommodation in this instance, and one that would enable this individual to be able to bathe independently.

AR 1115-16. The Advisory Opinion provided the following analysis for dressing independently:

> When it comes to dressing independently, the 8 September 2011 note assessed the member demonstrated complete independence when it came to dressing both his upper and lower body. This

11

> assessment contrasts significantly with the
> assessment offered by LT Balsamo on 12 June 2012
> which alluded to the fact the member continued to
> have difficulty manipulating buttons and zippers
> (among other things). Once again, this disparity
> is put to rest so long as one bears in mind the
> strict ADL definitions outlined in [the TSGLI
> Procedural Guide]. To a lay person, not being able
> to zip one's own pants sounds like an impaired ADL;
> however, this challenge is easily overcome if one
> opts for apparel that does not involve zippers,
> buttons, or shoelaces. For this ADL, sweatshirts,
> sweatpants, and loafers can be construed as
> accommodating devices. Here again, it is evident
> that should the member cho[o]se to take advantage
> of these accommodating devices, the member would be
> able to dress himself without incident.

AR 1116. The CORB also compared Terri Burns' independent nurse's

assessment with the evaluations of the inpatient OT team, which

were "more proximate to the time period in question," and

decided to weigh the inpatient team's assessments more heavily.

*Id*. The CORB concluded that "after reviewing all of the medical

records that were provided by the Petitioner, and after

resolving all doubt to the applicant's benefit, the

preponderance of the evidence still did not support the member's

claims that he required assistance to bathe and dress beyond 19

October 2011." AR 1117.

The BCNR substantially concurred with the CORB's Advisory

Opinion, and conducted its own evaluation of the record. AR

1111-13. After independently reviewing the record, the BCNR

concluded that there was insufficient evidence of a material

12

error or injustice warranting relief. AR 1113. In reviewing the
record, the BCNR stated the following:

> When reviewing [Plaintiff's] record, the Board
> highlighted that the WRNMMC occupational therapy
> (OT) notes from 8 September 2011 state that
> [Plaintiff was] "completely independent" in
> performing [his] ADLs, to include bathing and
> dressing. By 26 September 2011, the OT notes show
> that [Plaintiff was] able to put on pants
> independently and adapted his behavior by wearing
> "sweatpants, stretch pants, [and] that sort of
> stuff," as documented in your wife's statement of
> 10 June 2015. The notes also state that "showering
> is fine as long as the containers are open," which
> also qualifies as an adaptive behavior that allowed
> for functional independence.
>
> . . . .
>
> The Board noted that various documents in the record
> discuss [Plaintiff's] continued difficulty to manipulate
> buttons, zippers, personal hygiene containers, water
> knobs and other tasks that require fine motor skills.
> These records included, but are not limited to, the OT
> notes dated 26 September 2011, Lieutenant Balsamo's
> email of 12 June 2012, [Plaintiff's] statement of 9 June
> 2015, [Plaintiff's] wife's statement of 10 June 2014,
> and the correspondence from/between [Plaintiff] and
> Terri Burns. The Board considered [Plaintiff's]
> arguments that [his] disability of the arm, shoulder and
> hand (DASH) score indicated that [he was] "minimal
> functional capacity/dependent"; however, the Board noted
> that the self-rated assessment did not affect the
> Board's assessment of [Plaintiff's] ADL independence
> based on the OT notes discussed previously. The Board
> also considered Dr. Shelton's letter dated 29 June 2012,
> which provided a general assessment that "[a]ctivities
> using buttons, forks, knives, bottles, food items, [and]
> personal hygiene products are difficult with these types
> of digital impairments and loss." While the Board fully
> appreciated the impact that the loss of fine motor skills
> [has] had on [Plaintiff's] daily routine, the Board
> concurred with the CORB that the inability to master
> fine motor functions does not equate to an inability to

perform an ADL independently. The Board concluded that
although [Plaintiff] either did not receive, or could
not manipulate, accommodating equipment such as a
pincher grasp or a button hook aid, [he was] able to
adapt [his] behavior to successfully perform all ADLs
independently by 26 September 2011.

. . . .

The Board carefully considered [Plaintiff's] argument
that OT notes from WRNMMC conflicted with subsequent
medical evaluations and/or declarations provided by
[Plaintiff] and [his] wife. However, the Board did not
concur with [his] contention. The Board concluded that
the medical evaluations were consistent in their
assessment of the limitations [Plaintiff] experienced
while performing fine motor tasks; however, the Board
identified that a disparity occurred in the application
of the TSGLI Guidelines' definition of an individual's
ability to "independently perform activity" and whether
the member "requires assistance." The Board felt that
the most accurate and germane medical review was
documented by the inpatient OT notes issued by WRNMMC.
The Board highlighted that not only are these notes more
proximate in time to the injury, but the purpose of the
OT inpatient evaluation is to determine the level of
assistance that will be required when the patient
transitions home or to a rehabilitation facility.
During this evaluation, the definitions established in
the TSGLI Guidelines are reviewed and applied to the
specific case circumstances.

. . . .

The Board considered the notes made by Dr. Asher Smith,
Orthopedic Surgeon, on 13 March 2012, which state that
assistance was required with ADLs (specifically bathing
and dressing) for roughly three months. However, the
Board concluded that there was a lack of specificity in
the medical assessment, in regards to both the specific
timeframe of the required assistance, and as to whether
assistance was required when behavior was adapted to
achieve independence. The Board also considered the
Request for Non-Medical Attendant order signed by Dr.
Kim Moon, which documented the need for assistance with
dressing, bathing, and setting up a food tray for the

duration of 90 days and [Plaintiff's] email to Ms. Terri
Burns, RN. Again, the Board felt that Dr. Moon's order
lacked specificity, and, as the order was not dated and
was never processed or approved, it did not provide an
accurate assessment of [Plaintiff's] abilities in light
of the TSGLI Guidelines.  Finally, the Board considered
the 2013 and 2015 statements provided by Ms. Terri Burns,
RN, which generally discussed [Plaintiff's] inability to
perform the ADLs related to bathing and dressing without
assistance, but did not address whether assistance was
required   when   behavior   was   adapted   to   achieve
independence.  After reviewing all of the evidence, the
Board  concurred  with  the  advisory  opinion  that  the
assessment  conducted  by  the  OT  staff  at  WRNMMC,  which
was more proximate in time to the injury, is a more
accurate review and application of the TSGLI Guidelines
than the other medical assessments submitted in support
of [Plaintiff's] claim.

AR 1111-13. Accordingly, the BCNR denied Mr. Barker's

application. AR 1113.

The BCNR also considered certain procedural arguments put

forth by Mr. Barker. The Board noted that under SECNAVINST

1770.4, the evidentiary standard for TSGLI determinations is

"preponderance of the evidence." *Id.* The Board also found that

even if it applied a more favorable benefit of the doubt

standard, the evidence was not approximately balanced and it

clearly supported the decision of the BCNR. *Id.* Ultimately, the

BCNR concluded that even though there was evidence that showed

Mr. Barker's injuries were severe and that he received

assistance from his wife after September 26, 2011, with his

dressing and bathing ADLs, the preponderance of the evidence

"overwhelmingly signaled" that Mr. Barker "didn't *require* that

assistance, as defined by the TSGLI Guidelines, and [Mr. Barker] was able to perform [his] ADLs independently after that date." AR 1113 (emphasis in original). Accordingly, the BCNR found no error with the determination to deny him additional benefits. *Id.*

### 3. District Court Proceedings in this Case

Mr. Barker filed this action in July 2018 seeking a second remand of the BCNR's decision to deny TGSLI benefits beyond the $25,000 he has received. *See* Compl., ECF No. 1. Mr. Barker moved for summary judgment on the grounds that the BCNR's actions were arbitrary, capricious, and not in accordance with law. Pl.'s Notice of Mot. for Summ. J., ECF No. 13, at 1; Pl.'s Mem. of P. & A. in Supp. of his Mot. for Summ. J., ECF No. 13-1, at 15-16. The United States opposed Mr. Barker's motion and filed a cross-motion for summary judgment. Mem. of P. & A. in Supp. of Def.'s Cross Mot. for Summ. J. & Opp'n to Pl.'s Mot. for Summ. J., ECF No. 18-3. The motions are ripe for adjudication.

## II. Legal Standard

Although both parties have moved for summary judgment, the parties seek review of an administrative decision under the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706.[3]

_____

[3] District courts have jurisdiction to review certain administrative decisions by government agencies, including TSGLI claims. 38 U.S.C. § 1975. Where the jurisdictional grant does

16

Therefore, the standard articulated in Federal Rule of Civil Procedure 56 is inapplicable because the Court has a more limited role in reviewing the administrative record. *Wilhelmus v. Geren*, 796 F. Supp. 2d 157, 160 (D.D.C. 2011)(internal citation omitted). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *See Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)(internal quotation marks and citations omitted). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Wilhelmus*, 796 F. Supp. 2d at 160 (internal citation omitted).

Under the APA, a court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 738 (D.C. Cir. 2001). Review of agency action is generally deferential, *Blanton v. Office of*

---

not address the standard of review to be used by the court, such as here, challenges to decisions of military correction boards, such as the BCNR, are reviewable under the APA. *See, e.g.*, *Moreno v. Spencer*, 310 F. Supp. 3d 83, 87 (D.D.C. 2018)(applying the APA's arbitrary and capricious standard when reviewing TSGLI claim).

the Comptroller of the Currency*, 909 F.3d 1162, 1170 (D.C. Cir. 2018)(citing *Safari Club Int'l v. Zinke*, 878 F.3d 316, 325-26 (D.C. Cir. 2017)), as long as the agency examines the relevant facts and articulates a satisfactory explanation for its decision including a "rational connection between the facts found and the choice made." *Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)(citation omitted); *Iaccarino v. Duke*, 327 F. Supp. 3d 163, 177 (D.D.C. 2018). The "scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency." *Iaccarino*, 327 F. Supp. 3d at 173 (internal quotation marks omitted) (citing *State Farm*, 463 U.S. at 43).

Although the scope of review is deferential, "courts retain a role . . . in ensuring that agencies have engaged in reasoned decision making." *Iaccarino*, 327 F. Supp. 3d at 173 (citing *Judulang v. Holder*, 565 U.S. 42, 53 (2011)). The requirement that an agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result. *Id.* at 177 (citing *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993)). An agency's failure to set forth its reasons for a decision constitutes arbitrary and capricious action, and

a court must undo the agency action. *Id.* (citing *Amerijet Int'l Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014)).

## III. Analysis

Mr. Barker argues that the BCNR decision was arbitrary and capricious because it failed to apply the correct standard of review to his claim and failed to consider relevant evidence. The Court addresses each argument in turn.

### A. Whether the BCNR Failed to Apply the Correct Standard

Mr. Barker first argues that the BCNR failed to apply the substantial evidence or benefit of the doubt standard when it reviewed his claims. Pl.'s Mem. of P. & A. in Supp. of his Mot. for Summ. J., ECF No. 13-1, at 16-21. Pursuant to 38 U.S.C. § 5107(b), the benefit of the doubt standard requires the Secretary of Veteran Affairs to resolve doubts in favor of a veteran asserting a claim for benefits when the evidence in support of and against the claim are in equipoise. The relevant provision reads as follows:

> The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

38 U.S.C. § 5107(b).

The United States argues that because the statute creating TSGLI benefits gives the Secretary of Defense, or the relevant service secretary, the authority to determine whether the claimant has suffered a covered injury, not the Secretary of Veteran Affairs, then the benefit of the doubt standard does not apply to claims under the TSGLI. Mem. of P. & A. in Supp. of Def.'s Cross Mot. for Summ. J. & Opp'n to Pl.'s Mot. for Summ. J., ECF No. 18-3 at 15. The United States also argues that the regulations governing the TSGLI program have established the preponderance of the evidence standard as the standard which governs TSGLI claims, and that the regulations are entitled to deference. *Id.* at 16 (citing C*hevron U.S.A. Inc., v. Natural Res Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984)).

The Court need not resolve whether the benefit of the doubt standard may never apply to TSGLI claims, because Mr. Barker's claims fail even under that standard. As the BCNR found, even if the benefit of the doubt standard was controlling in this case, and it is not clear if it would be, it would not apply to Mr. Barker's case because the evidence in this case was not in equipoise, or approximately balanced. AR 1113. For reasons that the Court will explain, *infra* at Part III(B)(2), the BCNR adequately explained its finding that the preponderance of evidence "overwhelmingly signaled" that Mr. Barker was able to

perform his ADLs independently according to the TSGLI Guidelines and therefore the benefit of the doubt standard would not apply in this case. *Id.* Accordingly, the BCNR did not err when it determined that the benefit of the doubt standard was inapplicable in Mr. Barker's case.

## B. Whether the BCNR Violated the APA

Mr. Barker next argues that the BCNR acted arbitrarily and capriciously in denying his claim for TGSLI benefits beyond the $25,000 he received for his initial hospitalization. Mr. Barker argues that the BCNR erred when it (1) failed to consider important evidence and (2) failed to reconcile conflicting evidence. Pl.'s Mem. of P. & A. in Supp. of his Mot. for Summ. J. at 21-28.

### 1. The BNCR Considered the Relevant Evidence

Mr. Barker first takes issue with the BCNR's alleged failure to consider important evidence, including first-hand witness statements, which made direct assessments of ADL losses under the applicable TSGLI standards. *Id.* at 21–23. Courts have found that "an agency's failure to consider, or to discount, first-hand [witness] statements without explanation may render an agency's decision to deny TSGLI benefits arbitrary and capricious." *Rich v. United States*, 369 F. Supp. 3d 263, 274 (D.D.C. 2019). For example, in *Fail v. United States*, the U.S.

District Court for the District of Colorado held that the Army's failure to review statements submitted by the two plaintiffs' wives in support of their TSGLI claims was arbitrary and capricious because plaintiffs needed assistance to perform various ADLs, and the Army did not explain why it did not consider the evidence or why they chose not to credit it. No. 12-cv-01761-MSK-CBS, 2013 WL 5418169, at *10 (D. Colo. Sept. 27, 2013).

Most analogous to this case is *Blackwood v. United States*, 187 F. Supp. 3d 837, 846-47 (W.D. Ky. 2016). In *Blackwood*, the plaintiff, a member of the United States Army, was paralyzed after falling approximately six feet onto his neck during an obstacle training course. 187 F. Supp. 3d at 839, 840-41. Plaintiff had several limitations in functional mobility, and his movements were limited significantly. *Id.* at 840-41. In support of his TSGLI claim, the plaintiff's wife submitted a letter stating that hw was unable to perform various ADLs without her assistance. *Id.* at 842-43. The Army denied plaintiff's TSGLI claim on the basis that the plaintiff failed to provide sufficient documentation to support his claim for loss of at least two ADLs for the requisite time period. *Id.* at 839. The court held that the Army acted arbitrarily and capriciously because it failed to consider medical records and

the plaintiff's wife's letter which included certifications that the plaintiff was unable to independently perform at least two ADLs for over 120 days. *Id.* at 847. Because the Army failed to consider relevant evidence that was contrary to its ultimate conclusion, or explain why it discounted that evidence, the decision was arbitrary and capricious. *Id.*

These cases stand for the proposition that an agency acts arbitrarily and capriciously if all of, or the majority of, the evidence points one way and the agency does not explain why it has chosen the opposite route. *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404-05 (D.C. Cir. 1995)(citations omitted). In this case, the agency considered the witness statements and explained why the statements did not support a grant of benefits. AR 1111-13. Throughout its decision, the BCNR carefully reviewed significant evidence that Mr. Barker presented and thoroughly explained why it decided to deny Mr. Barker the benefits he sought. *Id.* For instance, even though the BCNR noted the documents that demonstrated Mr. Barker's continued difficulty to perform ADLs and listed those documents, AR 1111-12, the BCNR also highlighted Mr. Barker's complete independence and adaptive behaviors that allowed for functional independence. *Id.* The BCNR noted that the inability to master fine motor functions does not equate to an inability to perform ADLs independently. AR 1112;

*see also* TSGLI Procedures Guide, AR 1256. The Board clearly relied on all evidence presented, and reached a reasonable conclusion about Mr. Barker's independence and the assistance he required. AR 1111-13; *see also Moreno*, 310 F. Supp. 3d at 88-89 (stating "it is not for this Court to make inferences from the record evidence (or lack thereof), or to assess the strength and veracity of competing factual assertions or medical conclusions."). Because the agency considered the relevant evidence in Mr. Barker's case and its decision is supported by the record, his arguments to the contrary must fail.

### 2. The BCNR Adequately Explained its Decision

Mr. Barker next makes several general arguments that the BCNR's decision was illogical, irreconcilable with the evidence in the record, and not supported by substantial evidence. Pl.'s Mem. of P. & A. in Supp. of his Mot. for Summ. J., ECF No. 13-1 at 28. Under APA review, the question for this Court is whether the agency adequately explained its decision or if the decision "may be reasonably discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

The CORB and the BCNR both fully explained their decisions in this case while engaging in several layers of review of Mr. Barker's claims. In the first denial, the CORB explained how it came to its conclusion by examining the evidence Mr. Barker

introduced and it noted the ways that Mr. Barker had adapted his behaviors so that he could bathe and dress without assistance. AR 0855-56. The CORB granted Mr. Barker's request for a new decision, and then again denied Mr. Barker's request for reconsideration after considering new evidence. The CORB explained that Mr. Barker could perform ADLs with accommodative equipment, and therefore he did not meet the criteria of requiring assistance or standby assistance. AR 0135. Last the BCNR recognized that Mr. Barker was experiencing difficulty and received help from his wife, but he did not require the assistance. AR 0001-02.

In 2018, after the U.S. District Court of the Central District of California remanded the case to the BCNR, the CORB issued an Advisory Opinion to the BCNR. Mr. Barker argues that the CORB's Advisory Opinion did not reference all evidence submitted. Pl.'s Mem. of P. & A. in Supp. of his Mot. for Summ. J., ECF No. 13-1 at 13. However, final decision in this case was made by the BCNR not the CORB. The BCNR concurred with the CORB, but did not merely republish the CORB's Advisory Opinion. The BCNR independently considered the newly submitted evidence, listing and, clearly reviewing, the evidence in its decision and denied Barker's appeal again. AR 1110-13 (citing evidence from plaintiff's wife, Dr. Smith, Dr. Moon, and Terri Burns, RN).

In this case, both the CORB and the BCNR considered the evidence. It is apparent that the CORB clearly weighed all of the evidence in the original claim. AR 0855-56, 1115-16. It provided an analysis for bathing independently, dressing independently, and provided reasons for why it weighed certain evidence more highly than the evidence that Mr. Barker provided. For example, the CORB concluded that it would provide more weight to evaluations of the inpatient OT team because they were "more proximate to the time period in question," AR 1116, and the BCNR highlighted that "not only are these notes more proximate in time to the injury, but the purpose of the OT inpatient evaluation is to determine the level of assistance that will be required when the patient transitions home." AR 1112. The BCNR also "considered the notes made by Dr. Asher Smith. . . [but] concluded that there was a lack of specificity in the medical assessment, in regards to both the specific timeframe of the required assistance, and as to whether assistance was required when behavior was adapted to achieve independence." *Id.* Moreover, the BCNR reviewed all evidence and referenced the evidence that Mr. Barker submitted in support of his claim, finding twice that the TSGLI claim should be denied. AR 0001-02, 1110-13. Therefore, because it considered and

weighed all of the evidence, the BCNR did not act arbitrarily and capriciously when it denied Mr. Barker's application.

Mr. Barker also argues that there was no rational connection between the facts found and the choice made when the BCNR noted that Mr. Barker adapted his behaviors so that he could perform his ADLs. Pl.'s Mem. of P. & A. in Supp. of his Mot. for Summ. J., ECF No. 13-1 at 22-24. Mr. Barker relies on *National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007) for the proposition that an agency decision is arbitrary and capricious when it fails to consider the problem fully. *Id.* Although Mr. Barker is correct that an agency cannot fail to consider an important aspect of the problem and must explain its decision if the decision runs counter to the evidence, the precedent on which he relies also makes clear that the standard is deferential and an agency's explanation is upheld if the agency's "path may reasonably be discerned." *Nat'l Ass'n of Home Builders*, 551 U.S. at 658 (quotation marks omitted). Mr. Barker also relies on several cases which decide that conclusory explanations do not suffice to meet the deferential standards of judicial review. *See Ams. for Safe Access v. DEA*, 706 F.3d 438, 449 (D.C. Cir. 2013); *AT&T Wireless Servs., Inc. v. FCC*, 270 F.3d 959, 968 (D.C. Cir. 2001). But these cases hold that those explanations may be

"relatively simple and briefly stated." *See e.g., AT&T*, 270 F.3d at 968.

In this case, the BCNR easily clears that hurdle. The BCNR found that Mr. Barker adapted his dressing by wearing "sweatpants, stretchy pants, [and] that sort of stuff," which the BCNR gleaned from his wife's statement. AR 1111. The BCNR also found that Mr. Barker adapted his behavior by using open containers to shower, which qualified as functional independence. *Id.* Under the TSGLI Procedures Guide, if a servicemember can adapt to perform ADLs, then he does not require assistance needed to make a TSGLI claim. TSGLI Procedures Guide, AR 1282–83. The BCNR found that the evidence showed that Mr. Barker was able to bathe more than one part of the body and get into the shower as long as the container was open, and he was able to put on clothing, socks, and shoes as long as there were no zippers or buttons. AR 0301; *see id.* Under the guidelines, these activities qualified as adaptive behaviors that are not covered by TSGLI. *See* TSGLI Procedures Guide, AR 1283. The record shows that the BCNR reasonably drew conclusions based upon the evidence and it also provided more than a brief or simple explanation. Therefore, the BCNR thoroughly explained its denial of Mr. Barker's benefits.

Finally, Mr. Barker argues that the BCNR's decision was not supported by substantial evidence. When reviewing for substantial evidence, the Court does not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the agency's ultimate decision. *Florida Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010). Additionally, under the APA, the role of the agency is to resolve factual issues and to "arrive at the decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)(citations and internal quotation marks omitted).

In this case the administrative record supports the agency's ultimate decision. Again, the CORB and the BCNR both provided explanations that demonstrate how they came to their decision to deny Mr. Barker additional TSGLI benefits. Thus the agency made a reasonable determination and the Court will not disturb an explanation if it is well-reasoned and sufficiently explained.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Mr. Barker's motion for summary judgment and **GRANTS** the United States' cross-motion. An appropriate Order accompanies this Memorandum Opinion.

      **SO ORDERED.**

**Signed:**    **Emmet G. Sullivan**
             **United States District Judge**
             **September 6, 2019**